**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000731**
**16-APR-2019**
**07:54 AM**

NO. CAAP-18-0000731

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF

MP,
BORN ON 00/00/0000;

JP,
BORN ON 00/00/0000

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 17-00009)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Appellant-Father (**Father**) appeals from the Order Terminating Parental Rights, filed on September 10, 2018, in the Family Court of the First Circuit (**Family Court**).[1]

On appeal, Father challenges Findings of Fact Nos. 89 through 93 and 100 through 102, and contends that: (1) he was not provided a reasonable opportunity to reunify with his child, JP; and (2) there was not clear and convincing evidence that he could not provide a safe family home. Father seeks no relief as to MP.

---

[1] The Honorable Jennifer L. Ching presided.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced, the issues raised by the parties, and the relevant statutory and case law, we resolve Father's points of error as follows:

(1) Father argues he was not provided a reasonable opportunity to reunite with JP because Petitioner-Appellee State of Hawai'i, Department of Human Services (**DHS**), filed a Motion to Terminate Parental Rights approximately one year after filing a petition for foster custody. Father submits that the only reason he was not allowed more time to address his substance abuse problem was due to his incarceration.

On January 17, 2017, DHS filed a Petition for Temporary Foster Custody of JP. JP entered foster custody on January 19, 2017. At the time, Father was homeless and residing in a park. Subsequently, Father was incarcerated on approximately March 16, 2017. Father was released from prison in July 2017, but made no effort to establish visitation, maintain contact with DHS, or complete any of the services made available by DHS to address substance abuse, domestic violence, and parenting issues. Father was reincarcerated in November 2017. Father admits that he violated probation and was sentenced to one year in prison with an expected release date of November 2018. Although Father's incarceration may have impacted his ability to participate in services offered by DHS, DHS is not required to provide services beyond what is available within the corrections system to an

incarcerated parent.  In re Doe, 100 Hawai'i 335, 345, 60 P.3d 285, 295 (2002).

In order to terminate parental rights, there must be clear and convincing evidence that "[i]t is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care." Hawaii Revised Statutes (**HRS**) § 587A-33(a)(2) (2018).  Thus, two years is the maximum, not a minimum, amount of time within which a parent must become willing and able to provide a safe family home.  Father provides no authority to support his contention there is a minimum time period DHS must wait to file a motion to terminate parental rights.  We reject Father's contention that he was not provided a reasonable opportunity to reunite with JP because of the timing of DHS's motion.

(2)  Father contends that the Family Court erred by finding that there was clear and convincing evidence that Father was not willing and able to provide a safe family home within a reasonable period of time.

Father's parental rights were terminated on September 10, 2018, approximately 20 months after JP entered foster care. The time Father was incarcerated is not excluded from the maximum time period, In re T.H. and K.H., 112 Hawai'i 331, 336, 145 P.3d 874, 879 (App. 2006), and his incarceration may be considered as a factor, along with other factors and circumstances.  In re Doe,

100 Hawai'i at 345, 60 P.3d at 295. Also pertinent here, a previous termination of parental rights may be considered in determining whether a parent can provide a safe family home. In re B.P., 112 Hawai'i 309, 312, 145 P.3d 852, 855 (App. 2006).

DHS social worker Marshall Clark-Tokunaga (**Clark-Tokunaga**) testified that, in his opinion, Father could not presently or within the reasonably foreseeable future provide JP with a safe family home, even with the assistance of a service plan, because Father has unaddressed substance issues, domestic violence issues, and was, at the time, incarcerated. Father also had a history of termination of his parental rights to his older children. Clark-Tokunaga testified that Father's use of illegal substances is a safety concern because it affects his ability to appropriately parent and make safe decisions for his children and that Father had not resolved his safety concerns. In the earlier termination case, Father's safety concerns included substance abuse, domestic violence, and possibly incarceration, the same safety concerns as presented in this case. Clark-Tokunaga also stated that it did not appear that Father had sought any rehabilitation since the prior termination proceedings, that the concerns remained, and that it appeared that Father had no insight with respect to the issues. Clark-Tokunaga opined that it would take Father up to two years, if he was immediately compliant with all services, to demonstrate he could provide a safe family home and that it was not reasonably foreseeable that Father would become willing and able to provide a safe family home, even with a service plan, within a reasonable period of

time based, *inter alia*, on Father's past participation, or lack thereof, in services. The Family Court found Clark-Tokunaga credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation and internal quotation marks omitted).

We conclude that the Family Court did not err in determining that there was clear and convincing evidence that Father could not presently provide a safe family home, even with the assistance of a service plan, because Father had unresolved substance abuse issues, domestic violence issues, and was incarcerated. In re Doe, 95 Hawai'i 183, 192, 20 P.3d 616, 625 (2001). We further conclude that the Family Court did not err in determining that there was clear and convincing evidence that it was reasonably foreseeable that Father would not become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from JP's entry into foster care because, although Father likely would be released from prison within 20 months from JP's entry into foster care, he would most likely require an additional two years before he could demonstrate that he could provide a safe family home.

For these reasons, the Family Court's September 10, 2018 Order Terminating Parental Rights is affirmed.

DATED: Honolulu, Hawaiʻi, April 16, 2019.

On the briefs:

Herbert Y. Hamada,
for Father-Appellant.

Regina Mormad,
Julio C. Herrera,
Erin L.S. Yamashiro,
Patrick A. Pascual,
Deputy Attorneys General,
for Petitioner-Appellee
DEPARTMENT OF HUMAN SERVICES.

Presiding Judge

Associate Judge

Associate Judge